Katherine S. Huso
MATOVICH, KELLER & HUSO, P.C.
2812 1st Avenue North, Suite 225
P.O. Box 1098
Billings, MT  59103-1098
(406) 252-5500 Phone
(406) 252-4613 Fax
khuso@mkhattorneys.com

*Attorney for Plaintiff United Fire & Casualty Company*

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

| | |
|---|---|
| UNITED FIRE & CASUALTY COMPANY,<br><br>       Plaintiff/Counterclaim Defendant,<br><br>   vs.<br><br>KINKAID CIVIL CONSTRUCTION LLC,<br><br>       Defendant/Counterclaim Plaintiff. | CV 17-103-BLG-SPW-TJC<br><br><br>**UNITED FIRE'S RESPONSE TO KINKAID'S SECOND MOTION TO COMPEL** |

## <u>INTRODUCTION</u>

Kinkaid's Second Motion to Compel (Doc. 44) seeks to compel production of (1) United Fire's unredacted claims handling manual and (2) privileged communications between United Fire and its attorney.  United Fire produced a

complete, unredacted copy of its Claims Manual to Kinkaid's counsel on April 25, 2019, so this portion of Kinkaid's Second Motion to Compel is moot.  See **Exhibit 1** (United Fire's Second Supplemental Response to RFP 1 and Third Supplemental Response to RFP 3, 4).

United Fire opposes Kinkaid's Second Motion to Compel insofar as it seeks production of privileged communications between United Fire and its counsel. Ms. Huso advised Mr. Cossi of the reason for United Fire's opposition to producing these privileged communications on April 19, 2019.  See **Exhibit 2** (4/19/19 email from Huso to Cossi).

## <u>ARGUMENT</u>

It is well-settled that the attorney-client privilege applies with equal force in "bad faith" insurance litigation as in all other civil litigation.  *Dion v. Nationwide Mut. Ins. Co.*, 185 F.R.D. 288, 294 (D. Mont. 1998); *Baker v. CNA Ins. Co.*, 123 F.R.D. 322, 323 (D. Mont. 1988).  The Montana Supreme Court has expressly held that the attorney-client privilege protects communications in first-party bad faith cases when the insurer's attorney did not represent the interests of the insured in the underlying case.  *Id.* (citing *Palmer by Diacon v. Farmers Insurance* (1993), 261 Mont. 91, 108, 861 P.2d 895 (1993)).  Absent a voluntary waiver or an exception, the privilege applies to all communications from the client to the

attorney and to all advice given to the client by the attorney in the course of the professional relationship. *Palmer*, 261 Mont. at 108-109, 861 P.2d at 906.

Kinkaid argues that United Fire has voluntarily waived the attorney-client privilege because its counsel "acted as the insurance adjuster" with regard to United Fire's investigation and determination of coverage for Kinkaid's claims.[1] For the reasons discussed below, Kinkaid's argument is without merit.  The attorney-client privilege applies to all of the redacted communications between United Fire and its counsel, as such communications were made for the purpose of seeking or rendering legal advice, and Kinkaid has not shown a compelling need for their disclosure.  United Fire's handling of Kinkaid's claims, and the basis for its coverage position, can be found within the unredacted portions of the coverage claim file.

## I.    United Fire has not waived the attorney-client privilege by asserting advice of counsel as a defense or any other affirmative act.

To waive attorney-client privilege, a party must do more than merely deny the opposing party's accusations, but must affirmatively raise the issue involving privileged communications.  *Dion v. Nationwide Mut. Ins. Co.*, 185 F.R.D. 288, 295 (D. Mont. 1998).  In a bad faith case, an insurer may waive the privilege by

---

[1] This includes Kinkaid's request for a defense of the claims asserted by Denny's and HD Supply/Core & Main in the underlying lawsuit, as well as Kinkaid's request for reimbursement of the amounts it paid to a third party (the City of Billings) to repair damages caused by subsidence.

asserting advice of counsel as a defense or by disclosing its attorney as an expert. *Id*. United Fire has not done either in this case.

Kinkaid argues that United Fire has waived the attorney-client privilege by hiring coverage counsel to assist in its determination of coverage for Kinkaid's claims, including drafting the coverage denial letter. At least one federal court in Montana has already considered, and squarely rejected, this argument. In *Barnard Pipeline, Inc. v. Travelers Prop. Cas. Co. of Am.*, 2014 U.S. Dist. LEXIS 53778, 2014 WL 1576543 (D. Mont. 2014), a first-party bad faith case, Judge Christensen concluded that Travelers did not waive the right to claim attorney-client privilege with respect to certain documents in the claims file, despite the fact that its representatives admitted during their depositions that advice of counsel had influenced their decision-making process and coverage counsel drafted the denial letter to the insured. *Id*. at *2, *5. The Court held that such conduct was not equivalent to "affirmatively [raising] the issue involving privileged communications," nor did it rise to the level of impliedly raising an advice of counsel defense. *Id*.

Kinkaid's assertion that the attorney-client privilege does not apply because United Fire's counsel "acted as the claims adjuster" is wholly unsupported. The cases cited in Kinkaid's brief are easily distinguishable from the present case, in

terms of the activities performed by the insurer's counsel.[2]  In *Bronsink v. Allied Prop. & Cas. Ins.*, 2010 U.S. Dist. LEXIS 29166, 2010 WL 786016, * (W.D. Wash. 2010), outside counsel was hired to conduct examinations under oath, and the insurer's own initial disclosure and answers to interrogatories acknowledged that counsel "assisted with claims investigation."  In *Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 671 (S.D. Ind. 1991), outside counsel was hired to monitor the progress of the case, ensure compliance with Indiana arson reporting requirements, and conduct the examination under oath of the insured and his wife. In *Mission Nat'l Ins Co. v. Lilly*, 112 F.R.D. 160, 164 (D. Minn. 1986), the insurer hired outside counsel to investigate a fire loss, including the cause of the fire and who was responsible for it, which the court considered to be the "routine business of an insurance company."

In contrast to the above activities, United Fire's counsel was hired in May 2017 for the sole purpose of providing legal advice regarding coverage for the claims presented by Kinkaid.  The same counsel was subsequently hired to defend United Fire against Kinkaid's first-party bad faith claims, while continuing to provide legal advice regarding coverage.  These activities do not fall within the scope of claims handling, as they can only be conducted by an attorney.  As one California appellate court has observed, an insurance company's retention of legal

---

[2] United Fire's counsel was unable to find *Columbia Ins. Co. v. Tibbott*, No. 11-CV-1040 (PAM/SER), 2012 WL 13027067 (D. Minn. June 21, 2012), based on the citation that appears on page 8 of Kinkaid's brief (Doc. 44).

counsel to interpret the policy, investigate the details surrounding the damage, and to determine whether the insurance company is bound for all or some of the damage, is a "classic example of a client seeking legal advice from an attorney." *Aetna Cas. & Surety Co. v. Superior Court,* 153 Cal.App.3d 467, 474, 200 Cal.Rptr. 471, 474 (1984).  The *Aetna* Court further noted that:

> [A]n insurance company should be free to seek legal advice in cases where coverage is unclear without fearing that the communications necessary to obtain that advice will later become available to an insured who is dissatisfied with a decision to deny coverage. A contrary rule would have a chilling effect on an insurance company's decision to seek legal advice regarding close coverage questions, and would disserve the primary purpose of the attorney-client privilege -- to facilitate the uninhibited flow of information between a lawyer and client so as to lead to an accurate ascertainment and enforcement of rights.

*Id*. (citations omitted).

Any fact investigation undertaken by United Fire's counsel was directly related to her rendering of legal advice.  See *Bronsink*, 2010 WL at *5 (recognizing that "an attorney acting as a claims adjuster, and not as a legal advisor, could still claim the privilege if that attorney was an agent necessary for the provision of legal advice").  Additionally, the fact that United Fire's counsel prepared the letter explaining the basis for United Fire's coverage denial does not render the attorney-client privilege inapplicable with respect to the legal advice counsel provided to United Fire in other written communications.  The Montana federal court has already made clear that the attorney-client privilege does not suddenly disappear

simply because an insurer's attorney may have participated in drafting a coverage denial letter to the insured.  *Barnard*, 2014 WL at *2, *5.  Although United Fire's counsel authored the coverage denial letter, it was *United Fire*, and not its counsel, who made the ultimate decision to deny coverage.  Kinkaid correctly observes that counsel's November 21, 2018 letter to Kinkaid does not contain any legal authority.  This is precisely why United Fire's coverage claims adjuster can testify regarding the letter's content and the basis for United Fire's denial of coverage for the subsidence damages, without requiring any testimony from counsel.

> **C.    United Fire has not waived privilege by selectively disclosing communications with its counsel for tactical purposes.**

To the extent Kinkaid suggests that United Fire has waived the attorney-client privilege by selectively disclosing an email from the adjuster handling the underlying defense claim (Anne Belich) to coverage counsel, Kinkaid misinterprets the selective disclosure rule.  Privilege is only waived where a party makes a tactical decision to disclose selected communications for self-serving purposes.  *Dion*, 185 F.R.D. at 295 (citations omitted).  However, courts have discretion not to impose full waiver as to all communications on the same subject matter where the client has merely disclosed a communication to a third party, as opposed to making some use of it.  *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) (citing *In re Sealed Case*, 676 F.2d 793, 809 n.54 (D.C. Cir. 1982)).  In this case, Kinkaid has not identified the tactical purpose allegedly underlying

United Fire's disclosure of the email from Ms. Belich to coverage counsel.  And, no tactical purpose can be discerned from the substance of the email, in which Ms. Belich merely states that she will send a copy of her file to coverage counsel and reaffirms her understanding that United Fire did not receive any information regarding Kinkaid's claim prior to April 25, 2017.  These facts do not support Kinkaid's argument that United Fire selectively disclosed privileged communications to gain some tactical advantage, that would justify a full waiver as to all other communications on the same subject matter.

**II.    Even if United Fire's counsel had acted as a claims adjuster, the attorney-client privilege still applies to communications between United Fire and its counsel made for the purpose of seeking or rendering legal advice.**

Assuming for the sake of argument that United Fire's counsel acted as a claims adjuster, this does not render the attorney-client privilege inapplicable to all other communications between United Fire and its counsel.  To the extent Kinkaid contends that it does, this is a misstatement of the law.  Indeed, all of the decisions cited by Kinkaid on this issue recognize that even when an attorney acts as a claims adjuster, the attorney-client privilege still applies to those communications between the insurer and its attorney if made for the purpose of seeking or rendering legal advice.  "An attorney acting as a claims adjuster, and not as legal advisor, could still claim the privilege if that attorney was an agent necessary for the provision of legal advice." *Bronsink*, 2010 U.S. Dist. LEXIS, *5.

The *Harper* decision contains several examples of when the attorney-client privilege will apply to certain communications between an insurer and its counsel, but not to others, in cases where counsel has performed claims handling activities typically performed by the insurer.  In *Harper*, the Court held that the attorney-client privilege did not apply to the following communications from the insurer's counsel: (1) letter to the insurer transmitting the investigation report and an invoice for payment; (2) transmittal letter to the insurer with an invoice for the transcript of the insured's sworn statements; and (3) transmittal letter to the fire department transmitting the insured's sworn statements in compliance with the Arson Reporting Act.  138 F.R.D. at 672-73.  This was based upon the Court's determination that outside counsel was not acting as an attorney, but as a claims supervisor.  *Id*.  Notably, however, the Court held that the following communications *were* protected by the attorney-client privilege and ordered that they not be disclosed:

> 15 -- Letter to Auto-Owners from its outside counsel summarizing examinations under oath of the plaintiff and his wife.
>
> 18 and 19 -- Letter (and copy) to Auto-Owners from its outside counsel regarding the plaintiff's property claim and condition of the business of Best Body Shop.
>
> 32 -- Correspondence to Auto-Owners from its outside attorney on the status of the Small Business Administration's Proof of Loss.
>
> 35 -- Correspondence to Auto-Owners from its outside counsel regarding demand letter from the plaintiff's attorney.

36 -- Correspondence to Auto-Owners from its outside counsel regarding the attached S.B.A. proof of loss statement.

37 -- Correspondence to Auto-Owners from its outside counsel regarding status of S.B.A.

41 -- Correspondence to Auto-Owners from its outside counsel acknowledging receipt of the plaintiff's case.

49 -- Auto-Owners' internal memorandum directing request for information on status of S.B.A. from its outside counsel.

50 -- Communication to Auto-Owners from its outside counsel regarding request of the plaintiff's attorney for information.

*Id*. at 674-75.  The Court concluded that these documents and communications fell within the attorney-client privilege because they included the mental impressions of outside counsel on legal matters while he was acting as an attorney, and not a claims process supervisor.  *Id*.

Therefore, to the extent that United Fire's counsel acted as a claims adjuster rather than a legal advisor, a careful analysis is still required in order to determine whether the attorney-client privilege applies to those communications made for the purpose of rendering legal advice.  See *Barnard*, 2014 WL at *3 (noting that these distinctions must be made on a case-by-case or document-by-document basis).

**III.  The work product protection applies to all documents authored by United Fire's counsel after June 22, 2017, the date United Fire had notice of Kinkaid's impending bad faith claim.**

Montana courts have long recognized a distinction between the "strategy,

mental impressions and opinion of the insurer's agents concerning the handling of the claim," and the opinion work product of an insurer's attorneys which *is* protected from disclosure, even in a bad faith case. *Barnard*, 2014 WL at *5 (citing *Moe v. System Transport, Inc.*, 270 F.R.D. 613, 627-28 (D. Mont. 2010)).

> This is because unless the insurer relies on the advice of counsel defense "the insurer, not the attorneys, [makes] the ultimate decision to deny coverage," and therefore "attorney mental impressions and opinions are not directly at issue" in insurance bad faith claims. The insured cannot establish a compelling need for opinion work product of an insurer's attorneys and the work product doctrine thus protects such materials from disclosure.

*Id*. (internal citations omitted).

In *Barnard*, the insured argued it was entitled to all documents authored by Travelers' coverage counsel up until the time Travelers denied the claim. *Id*. at *6. The Court disagreed and determined that Travelers was entitled to work product protection for all documents authored by its counsel after Travelers had notice of the bad faith claim against it. *Id*. Such documents were made in anticipation of litigation and the insured did not demonstrate a compelling need for the documents because the mental impressions of Travelers' counsel were not directly at issue. *Id*. The *Bronsink* decision, upon which Kinkaid relies, also recognizes that the work product privilege may apply to documents that are prepared in anticipation of litigation by or for the party asserting the privilege, in cases where an attorney acts as a claims adjuster. 2010 WL 786016, *5. The *Bronsink* court ultimately ordered

production of the insurer's claim file because the insurer did not sufficiently demonstrate that the attorney-client and/or work product privilege applied to the documents that were being withheld.  This is not the case here, as United Fire has provided a sufficiently detailed privilege log for each document withheld.

United Fire reasonably anticipated that Kinkaid would be asserting a bad faith claim as of June 22, 2017, when it received a letter from Kinkaid's personal counsel stating Kinkaid was now in the position of "going it alone" because of United Fire's delays.  See **Exhibit 3** (6/19/17 letter from Kelly to Belich).  Because United Fire has not waived its right to claim the attorney-client privilege, any documents containing counsel's strategy, mental impressions and/or opinions are not directly at issue in this case.  Therefore, to the extent such documents were generated by counsel after United Fire had notice of Kinkaid's impending bad faith claim, they are protected from disclosure by the work product doctrine, in addition to the attorney-client privilege.  *Barnard*, 2014 WL at *5.

DATED this 3rd day of May, 2019.

**MATOVICH, KELLER & HUSO, P.C.**

By:   /s/ Katherine S. Huso
        Katherine S. Huso
        *Attorney for Plaintiff United Fire &*
        *Casualty Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 3rd day of May, 2019, a copy of the foregoing was served on the following persons by the following means:

| 1, 2 | CM/ECF | _____ | Fax |
|---|---|---|---|
| _____ | Hand Delivery | _____ | Email |
| _____ | Mail | _____ | Overnight Delivery Service |

1.  Clerk, U.S. District Court, Billings Division

2.  Domenic A. Cossi
    Jory C. Ruggiero
    WESTERN JUSTICE ASSOCIATES, PLLC
    303 West Mendenhall, Suite 1
    Bozeman, MT  59715
    domenic@westernjusticelaw.com
    jory@westernjusticelaw.com

**MATOVICH, KELLER & HUSO, P.C.**

By:  /s/ Katherine S. Huso

Katherine S. Huso
*Attorney for Plaintiff United Fire &*
*Casualty Company*