Domenic A. Cossi
Jory C. Ruggiero
WESTERN JUSTICE ASSOCIATES PLLC
303 West Mendenhall Street Suite 1
Bozeman, MT 59715
(406) 587-1900
*domenic@westernjusticelaw.com*
*jory@westernjusticelaw.com*

*Attorneys for Defendant/Counterclaimant Kinkaid*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION**

| | |
|---|---|
| UNITED FIRE & CASUALTY COMPANY,<br><br>Plaintiff/Counterclaim Defendant,<br><br>vs.<br><br>KINKAID CIVIL CONSTRUCTION LLC,<br><br>Defendant/Counterclaimant | Cause No. DV-17-103-BLG-SPW-TJC<br><br><br><br>**DEFENDANT/COUNTERCLAIMANT KINKAID'S BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTS I AND II OF COUNTERCLAIM** |

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................2

II.     FACTS .......................................................................................6

III.    LEGAL STANDARDS ..............................................................6

IV.     CHOICE OF LAW......................................................................7

V.      ARGUMENT...............................................................................8

        A.    The Policy Grants Coverage For the Subsidence Claim....................10

        B.    United Fire Is The Primary Insurer For This Loss ............................12

        C.    No Exclusions Or Conditions Apply To Defeat Coverage For
              The Subsidence Claim ......................................................................14

              1.    The "Voluntary Payment" Condition In The Policy Does
                    Not Defeat Coverage ................................................................14

                    a.    The "Voluntary Payment" Condition Does Not
                          Apply To This Claim When Construed Narrowly .........15

                    b.    United Fire Was Not Prejudiced By Kinkaid's
                          Mitigation Of Damages That Would Have Increased
                          Exponentially Without Immediate Repair.....................17

                    c.    The "Voluntary Payments" Clause Is Void Under
                          Montana Statutory Law and It Contravenes The Rule To
                          Mitigate Damages..........................................................20

                          i.    The Voluntary Payments Clause Is Void
                                Because The Policy Does Not Comply With
                                The Insurance Simplification Act .......................20

                          ii.   The "Voluntary Payments" Clause Is Void
                                Because It Requires An Insured To Violate
                                Its Duty To Mitigate Damages............................21

                    d.    The Voluntary Payments Clause Violates Kinkaid's
                          Reasonable Expectations Of Coverage When

Working On Projects Involving Interstate
Transportation ...................................................24

2.    United Fire Waived Its Right To Deny The Subsidence
Claim By Waiting 18 Months To Formally Adjust the
Claim ...................................................................... 25

3.    United Fire Admits That No Exclusions Apply To The
Subsidence Damage And, At Most, The Bore Or Main
Replacement Cost Could Be Excluded....................................26

D.    Subsidence Claim Damages Are $610,861.15 And Declaratory
Judgment For Future Subsidence Damages Is Appropriate ..............28

VI.   CONCLUSION ..............................................29

CERTIFICATE OF COMPLIANCE ....................................30

CERTIFICATE OF SERVICE.............................................31

# TABLE OF AUTHORITIES

*A.M. Welles, Inc. v. Montana Materials, Inc.,*
     2015 MT 38, 378 Mont. 173, 342 P.3d 987 ............................................ 12, 15

*Anderson v. Liberty Lobby, Inc.,*
     477 U.S. 242 (1986) ...................................................................................... 7

*Arrowhead Sch. Dist. No. 75, Park Cty. v. Klyap,*
     2003 MT 294, 318 Mont. 103, 79 P.3d 250 ................................................ 23

*Atl. Cas. Ins. Co. v. Greytak,*
     2015 MT 149, 379 Mont. 332, 350 P.3d 63 ............................................ 17, 20

*Blue Cross & Blue Shield of Montana, Inc. v. Montana State Auditor,*
     2009 MT 318, 352 Mont. 423, 218 P.3d 475 .............................................. 13

*Celotex Corp. v. Catrett,*
     477 U.S. 317 (1986) ...................................................................................... 6

*Diede v. Davis,*
     203 Mont. 205, 661 P.2d 838 (1983); ......................................................... 23

*Estate of Gleason v. Cent. United Life Ins. Co.,*
     2015 MT 140, 379 Mont. 219, 350 P.3d 349 ........................................... 7, 15

*Johnson v. Wells Fargo Home Mortg. Inc.,*
     635 F.3d 401 (9th Cir.2011) ........................................................................... 7

*Matsushita Electr. Indus. Co. v. Zenith Radio Co.,*
     475 U.S. 574 (1986) ....................................................................................... 7

*Meadow Brook, LLP v. First Am. Title Ins. Co.,*
     2014 MT 190, ¶ 15, 375 Mont. 509, 329 P.3d 608 ..................................... 24

*Montana Petroleum Tank Release Comp. Bd. v. Crumleys, Inc.,*
     2008 MT 2, 341 Mont. 33, 174 P.3d 948 ............................................... 20, 21

*Newman v. Scottsdale Ins. Co.,*
     2013 MT 125, 370 Mont. 133, 301 P.3d 348 ................................................. 7

*Roaring Lion, LLC v. Nautilus Ins. Co.*,
    No. CV 11-2-M-DWM-JCL, 2011 WL 3956132, at *7 (D. Mont.
    July 15, 2011), report and recommendation adopted,
    No. CV 11-2-M-DWM-JCL, 2011 WL 3955800
    (D. Mont. Sept. 7, 2011) ...............................................................................27

*Safeco Ins. Co. v. Ellinghouse*,
    223 Mont. 239, 725 P.2d 217 (1986) ...............................................25, 26, 27

*Schmidt v. Washington Contractors Grp., Inc.*,
    1998 MT 194, ¶ 24, 290 Mont. 276, 964 P.2d 34 .......................................19

*State Farm Mut. Auto. Ins. Co. v. Taylor*,
    223 Mont. 215, 725 P.2d 821 (1986) ....................................................22, 23

*Tidyman's Mgmt. Servs. Inc. v. Davis*,
    2014 MT 205, 376 Mont. 80, 330 P.3d 1139 .................................................8

## REGULATIONS AND ADMINISTRATIVE MATERIALS

Fed. R. Civ. P. 56(a), (c)..................................................................................6

Mont. Code Ann. § 28-1-104.............................................................................7
                   § 28-2-707......................................................7, 22, 24
                   § 33-15-337(2) .......................................................21
                   § 33-18-232...........................................................29

# I.    INTRODUCTION

Defendant/Counterclaimant Kinkaid Civil Construction, LLC  (Kinkaid) hereby files its Brief in Support of its Motion for Partial Summary Judgment on Counts I and II of its Counterclaim.  Counterclaimant seeks a determination that Plaintiff/Counter-Defendant United Fire & Casualty Company (United Fire), must pay for damages incurred to date on the subsidence claim at issue in this case and a declaration that United Fire must cover future damages incurred.

Kinkaid plans and installs civil infrastructure of all types.  Kinkaid was founded in Arizona in 2011 and expanded to Montana in 2015.  Kinkaid grew to employ 82 people in 2017 and was profitable every year, until United Fire wrongfully delayed and denied coverage for the incident that gives rise to this lawsuit.  Due to United Fire's failure to protect its insured, today Kinkaid employs only 36 people and lost money for the second year in a row in 2018, despite the booming construction economy.

This case arises from a water main project that Kinkaid completed for the City of Billings (the project) in 2016.  The project involved horizontal drilling under I-90, a railroad and a frontage road and inserting a 30-inch pipe casing (the bore) and then running a 24-inch water main through the bore.  In conjunction with Kinkaid's bid for the water main project 2016, Kinkaid's insurance broker, Jake Grover extended Kinkaid's Commercial General Liability to include the project.

Kinkaid was awarded the bid for the project and employed a subcontractor, Denny's Electric & Motor Repair, Inc. (Denny's), to drill the bore and run the water main through the casing. Denny's drilled the bore in July of 2016, but then left the project. Kinkaid was forced to run the water main through the bore and complete a pressure test required before making the water main operational. On August 8, 2016, Kinkaid conducted the pressure test. Unfortunately, the test resulted in a failure and collapse of the water main.

Kinkaid immediately notified all appropriate governmental authorities of the failure. Kinkaid also notified its insurance agent, Jake Grover, of the failure on the same day. United Fire allows an insured to report a claim to its insurance agent.

On August 22, 2016, Kinkaid was notified that subsidence of I-90, the railroad and frontage road was occurring as a result of the collapse of the bore. Pursuant to its contract with the City of Billings, Kinkaid was required to repair any damage to property or subsidence to roads resulting from the project and worked with the appropriate authorities to come up with a plan to do so. On November 22, 2016, the Montana Department of Transportation informed the project engineer that Interstate 90 would need to be "leveled as soon as a contractor is available." Kinkaid then set about fixing the subsidence and finishing the project to avoid catastrophic damages that would result from any delay in repairing a freeway, railroad and frontage road.

Kinkaid worked with its insurance broker and determined that because Kinkaid believed Denny's was at fault, it would submit a claim to Denny's insurer. Grover filed a claim with that insurer, Western National Mutual Insurance Company (Western National), on September 29, 2016. Western National asked for more information on January 13, 2017.

In April 2017, Grover recommended Kinkaid file a claim for the subsidence damages with its insurer, United Fire, because Western National continued to delay. Grover filed that claim on April 24, 2017. That same day, Grover emailed documents to a United Fire adjuster showing the expenses incurred to date and informed United Fire that work was continuing through the summer of 2017.

On March 13, 2017 Denny's filed a Complaint against Kinkaid for payment, which had been denied due to Denny's failure to complete the project and responsibility for the subsidence damage. Kinkaid tendered the defense to United Fire, which provided a defense of that case.

Over the next few months, United Fire switched adjusters on the subsidence claim multiple times. United Fire failed to affirm or deny coverage or give any warning to Kinkaid that it may deny the claim if Kinkaid fulfilled its obligations to repair the subsidence damages. Between May 1, 2017 and August 1, 2017, Kinkaid incurred another $357,765.70 in subsidence related repair costs. United Fire never visited the site or requested any justification of the repair expenses.

In total, Kinkaid incurred $610,861.15 in subsidence related expenses out of its own pocket. Kinkaid was the only party that took responsibility to ensure that the public and interstate commerce would not be endangered due to the subsidence of a freeway, railroad and frontage road.

On July 31, 2017, United Fire filed this action against Kinkaid, asserting that it had no duty to defend Kinkaid in the Denny's suit. On August 29, 2017, Kinkaid counterclaimed for the subsidence damage claim and United Fire's bad faith failure to adjust the claim.

Throughout the course of the claim and this lawsuit, including discovery and expert disclosures, United Fire never issued Kinkaid a formal denial letter for the subsidence. Not until November 21, 2018, over 18 months after the claim was made, did United Fire formally deny Kinkaid's claim. United Fire's own claim manual requires that it respond to a claim via a formal letter sent via certified mail.

In addition to United Fire's failure to adjust the claim, United Fire delayed in responding to Kinkaid's discovery propounded in April 2018 until April 12, 2019 and only responded after Kinkaid moved to compel on March 29, 2019. United Fire's eventual discovery responses were insufficient under federal law and required another Motion to Compel. United Fire provided additional responses on April 25, 2019, just 14 days before the Motions deadline. The discovery motions are not completely resolved and remain pending.

United Fire's "denial" letter reads like a reservation of rights. United Fire admits that no exclusions apply to the vast majority of subsidence damages, then cites four reasons that it "may" deny the subsidence claim: 1) Kinkaid has not been determined to be "legally obligated" for the subsidence claim; 2) Western National may be responsible for the subsidence claim, excusing United Fire; 3) Kinkaid failed to obtain United Fire's consent for the subsidence repairs; and 4) no exclusions apply to the subsidence damages but may apply to the bore and/or water main replacement. As discussed below, these arguments are late, rely upon policy provisions that are void or illegal, violate United Fire's own claims handling guidelines and otherwise lack merit under Montana law.

## II.    FACTS

The above introduction is provided for the Court's convenience. A longer recitation of the facts and citation to the contracts and policy at issue can be found in the Statement of Undisputed Facts filed contemporaneously with this Motion.

## III.    LEGAL STANDARDS

When discovery and affidavits demonstrate that no material disputed fact exists, judgment may be entered as a matter of law. Fed. R. Civ. P. 56(a), (c). Under Rule 56, the moving party's initial burden is slight; Rule 56 does not require the movant to negate the nonmoving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). The nonmoving party cannot satisfy its burden by setting

forth mere speculation or conclusory allegations. *Matsushita Electr. Indus. Co. v. Zenith Radio Co.*, 475 U.S. 574, 585-86 (1986). "[T]he nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial." *Matsushita Electr.*, 475 U.S. at 586.

A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Exclusions and Conditions in policies must be narrowly and strictly construed because they are contrary to the fundamental protective purpose of an insurance policy. *Newman v. Scottsdale Ins. Co.*, 2013 MT 125, ¶ 35, 370 Mont. 133, 301 P.3d 348; *Estate of Gleason v. Cent. United Life Ins. Co.*, 2015 MT 140, ¶ 30, 379 Mont. 219, 226, 350 P.3d 349, 354 (citing Mont. Code Ann. § 28-1-104). "[A]ny ambiguity in an insurance policy must be construed against the insurer." *Newman*, ¶ 41 (internal citation omitted).

Insurance provisions contrary to express provisions of law or repugnant to the purpose of an insurance contract are void. Mont. Code Ann. § 28-2-707.

## IV.   CHOICE OF LAW

A federal court sitting in diversity applies the substantive law of the forum state, including the choice-of-law rules of the forum state. *Johnson v. Wells Fargo Home Mortg. Inc.*, 635 F.3d 401, 420 n. 16 (9th Cir.2011).

When a policy contains no choice of law provision, the anticipated place of performance is in Montana and the controversy arises in Montana, then Montana law applies. *Tidyman's Mgmt. Servs. Inc. v. Davis*, 2014 MT 205, ¶ 20, 376 Mont. 80, 93, 330 P.3d 1139, 1149. That is because Montana has the most significant relationship to the claim. *Id.*

Here, there is no choice of law provision. (Kinkaid's Statement of Undisputed Facts, ¶ 17 (May 10, 2019)(hereinafter "SUF"). United Fire sold Kinkaid a CGL policy that included premiums for Montana projects and coverage and endorsements "applicable to Montana." (SUF ¶ 13). The property damaged is owned by the City of Billings and the State of Montana. Thus, Montana has the only significant relationship to the claim. Montana law applies. *Id.*

## V.    ARGUMENT

United Fire first issued a denial letter over 18 months after Kinkaid's claim for the subsidence damage. The denial stated that: 1) coverage may not be triggered because Kinkaid "may not" be legally liable for the subsidence damage; 2) Denny's insurer, Western National, may be liable for the subsidence damage; 3) Kinkaid may have wrongfully mitigated damages without consent; and 4) no exclusions apply to the subsidence damage but may apply to the cost of the replacement water main or bore. (SUF ¶ 57, and Exh. 17 to SUF).

As discussed below, coverage is clearly triggered because Kinkaid was legally obligated for the subsidence damages as they occurred under its contract with the City of Billings, which the policy contemplated. The policy makes United Fire the primary insurer in this situation. United Fire's attempt to make itself excess insurance constitutes illegal early subrogation because United Fire is effectively denying its insured's claims on the basis that its insured may potentially receive benefits from another insurer.

Further, United Fire cannot deny the claim as a non-permitted "voluntary payment" when 1) Kinkaid's payment was not voluntary and United Fire impliedly consented when insuring this type of project; 2) United Fire was not prejudiced when Kinkaid's mitigation of potentially catastrophic damages actually saved United Fire money; 3) United Fire's policy did not contain a table of contents or notification of important provisions section, making the "no voluntary payments clause" void for this as well as other reasons; and 4) the condition would violate Kinkaid's reasonable expectations in this case.

In addition, United Fire waived its ability to deny the claim at all by waiting 18 months to issue a formal denial.

Finally, United Fire is correct that no exclusions defeat coverage for the subsidence claim.

United Fire has created a situation in which it collected premiums for a risk, but then essentially forces its insured to be a self-insured entity despite paying those premiums. United Fire's denial is illegal and United Fire should be ordered to pay Kinkaid $610,861.15, or the amount found to be appropriate by the Court, plus interest and enter a declaration that future subsidence damages are covered.

## A.    The Policy Grants Coverage For the Subsidence Claim

The policy unambiguously grants coverage for the subsidence claim in the standard CGL agreement, which states:

> a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies . . . .
>
> b.    This insurance applies to "bodily injury" and "property damage" only if: (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory" . . . .
>
> *******
>
> 13.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
>
> *******
>
> 4.    "Coverage territory" means: a. The United States of America (including its territories and possessions), Puerto Rico and Canada. . . .

(See Doc. 20-3 pp. 20, 32 and 34).

United Fire's assertion in its denial letter that there has been "no determination" that Kinkaid is "legally obligated to pay" the subsidence claim is disingenuous at best. United Fire attempts to cast the question of liability for the subsidence claim solely in the context of the underlying suit between Kinkaid, Denny's and Core and Main. However, United Fire ignores the reality of civil construction that Kinkaid was "legally obligated" to repair the subsidence immediately after it occurred. Kinkaid's contract with the City of Billings required:

> The pipe shall be installed in a manner that does not cause upheaval, settlement, cracking, or movement and distortion of surface features. Any damages caused by the Contractor's operations shall be corrected by the Contractor. (SUF ¶ 23).

It also advised:

> The Contractor is hereby cautioned that any damage done in any paved or gravel road, due to any construction or travel operations (hauling, storage, unloading, etc.), shall be repaired and/or replaced at Contractor's expense, and to the satisfaction of the Owner. (SUF ¶ 23).

Whether it was Denny's negligence, an issue with the pipe, or Kinkaid's negligence, it is undisputed that the pipe ruptured and caused "settlement, cracking, or movement and distortion" of "surface features" and caused damage to road pavement and other property. (SUF ¶¶ 27-33). It is undisputed that Kinkaid was the Contractor and the subsidence occurred due to its "operations." (SUF ¶¶ 24-27).

Accordingly, Kinkaid was "legally obligated" under its contract with the City of Billings to correct the subsidence damage, regardless of who was at fault, because the damages were the result of the Contractor's operations. *See A.M. Welles, Inc. v. Montana Materials, Inc.,* 2015 MT 38, ¶ 12, 378 Mont. 173, 177, 342 P.3d 987, 990 (Determination of fault or negligence not necessary to require contractor to indemnify when it promised to indemnify for any "act or omission.").

The determination of liability in the lawsuit involving Denny's and Core and Main has nothing to do with the requirement that Kinkaid fix the subsidence pursuant to its contract with the City of Billings. *See Id.* The failure was unquestionably an "accident" that caused property damage to a freeway, railroad and frontage road. (SUF ¶¶ 27-33). Billings is in the United States.

The undisputed facts show that coverage was triggered. As discussed below, United Fire had no other valid reason to deny the claim.

**B.    United Fire Is The Primary Insurer For This Loss**

Because the City of Billings' contract with Kinkaid required that the City be an additional insured, the Policy made United Fire the primary insurer for this project. (SUF ¶¶ 20-21).

The Additional Insured - Owners, Lessees Or Contractors Endorsement (Additional Insureds Endorsement) provides coverage for "[a]ny person or organization to whom or to which the named insured is obligated by a virtue of a

written contract to provide insurance that is afforded by this policy. . . ." (Doc. 20-3, p. 36). It is undisputed that Kinkaid added this endorsement for the Project and United Fire made it "applicable to Montana." (SUF ¶ 14). Here, Kinkaid's written contract with the City of Billings required that the City be named in an insurance policy for the project. (SUF ¶ 20). Thus, this coverage part applies to the subsidence claim.

The significance of this endorsement is that it makes United Fire's obligation one of primary insurance:

> PRIMARY CLAUSE:
> When this endorsement applies and when required by written contract, such insurance as is afforded by the general liability policy is primary insurance and other insurance shall be excess and shall not contribute to the insurance afforded by this endorsement. (Doc. 20-3, p. 36).

This clause is provided to protect insureds in this exact situation. Kinkaid had no choice but to make the repairs to the interstate travel systems when the subsidence was discovered because it had agreed to do so in its contract. (SUF ¶ 34). Thus, United Fire was the primary insurer for the subsidence claim.

Further, United Fire's denial constitutes illegal early subrogation before its insured was made whole. *See Blue Cross & Blue Shield of Montana, Inc. v. Montana State Auditor*, 2009 MT 318, ¶ 18, 352 Mont. 423, 428, 218 P.3d 475, 480. Kinkaid's CGL policy is not actually an "excess" policy such as an Umbrella policy. If no other insurers are involved, this policy would provide coverage for

covered events.  The Montana Supreme Court clearly stated in *Montana State Auditor* that an insurer may not avoid paying insurance benefits by asserting that another insurer is responsible "whether or not the insured actually receives any of those benefits, and whether or not the insured has been made whole." *Id.* at ¶ 19. It held that "[o]nly when the insured is made whole as defined in Montana law, and then <u>only after [an insurer] has paid out benefits to its insured</u>, could [the insurer] be entitled to claim subrogation." *Id.* (underline added).

Thus, United Fire may not deny the claim by claiming it is "excess" insurance, because the policy actually makes United Fire the primary insurer in this situation and because to do so results in illegal early subrogation before United Fire actually "paid benefits to its insured."

## C. No Exclusions or Conditions Apply To Defeat Coverage For The Subsidence Claim

United Fire cannot deny coverage because 1) the "voluntary payment" clause does not apply to this case for a number of reasons and 2) United Fire admits in its denial that no exclusions bar coverage.

### 1. The "Voluntary Payment" Condition In The Policy Does Not Defeat Coverage

As discussed below, United Fire admits that no exclusions apply to the subsidence damage.  Its only remaining argument, that Kinkaid lost coverage when it made a "voluntary payment" is unavailing because 1) the payment was not

voluntary as repairing the subsidence was Kinkaid's legal obligation under its contract with the City; 2) United Fire was not prejudiced by Kinkaid's compliance with its legal obligation; 3) the "voluntary payment" clause is void for a number of reasons; and 4) the Policy would violate Kinkaid's reasonable expectations of having coverage for public works projects that may require immediate repair to interstate travel systems.

### a.	The "Voluntary Payment" Condition Does Not Apply To This Claim When Construed Narrowly

United Fire's reliance on the "voluntary payment" clause fails because Kinkaid's repair of the subsidence damage was not "voluntary" and United Fire actually consented by agreeing to insure this project. *See A.M. Welles, Inc.*, 342 P.3d at 990. It is undisputed that Kinkaid agreed in its contract with the City of Billings to repair any damage to property, roads, asphalt and surface features caused by its operations. (SUF ¶ 23). Because the contract required Kinkaid to repair damage that occurred during its operations, Kinkaid was legally obligated when the damage occurred with the City. *A.M. Welles, Inc,* 2015 MT 38 at ¶ 12.

Conditions in insurance policies, like exclusions, are to be construed narrowly and strictly against an insurance company. *Estate of Gleason*, 350 P.3d at 354. United Fire's "Voluntary Payment" condition states: "No insured will,

except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent." (Doc. 20-3, p. 83.)

United Fire's denial asserts that Kinkaid made a "voluntary payment," which may defeat coverage. However, the payment was not "voluntary." The word voluntary implies that Kinkaid had a choice to wait to make the repairs. Instead, Kinkaid was legally obligated under its contract with Billings to repair this damage. For example, Kinkaid was informed that Interstate 90 would need to be "leveled as soon as a contractor is available." (SUF ¶ 34).

Further, United Fire consented to covering the project and thus consented in advance to these types of repairs. It is undisputed that United Fire issued a revised declarations page shows this project was insured. (SUF ¶ 9 and Exh. 3 to SUF at Exh. A). United Fire cannot wait 18 months to adjust a claim and then state that Kinkaid should have waited for approval to make repairs that it was legally obligated to make.

Because the payment was not voluntary, the "voluntary payment" clause does not apply. Further, United Fire consented to these repairs when it agreed to insure this project that required Kinkaid to repair any subsidence damages that occurred as a result of Kinkaid's operations, especially those involving interstate travel.

**b.** **United Fire Was Not Prejudiced By Kinkaid's Mitigation of Damages That Would Have Increased Exponentially Without Immediate Repair**

In order to deny coverage due to an insured not complying with an obligation in a Policy, an insurer must be prejudiced by the failure to comply. *Atl. Cas. Ins. Co. v. Greytak*, 2015 MT 149, ¶ 14, 379 Mont. 332, 337, 350 P.3d 63, 67. In *Greytak*, the Montana Supreme Court answered a certified question regarding whether an insurer must demonstrate prejudice to deny coverage due to its insured's failure to comply with notice requirements in a policy. *Id.* at ¶ 1. In its holding, the Supreme Court stated:

> An insured's technical or illusory failure to comply with obligations of a policy will not automatically terminate coverage, and an insurer who does not receive timely notice required by the terms of an insurance policy must demonstrate prejudice from that lack of notice in order to avoid the obligation to provide defense and indemnification of the insured.

*Id.* at ¶ 14. Thus, an insurance company must show prejudice from any technical non-compliance with an "obligation" in an insurance policy in order to deny a claim.

Here, the "voluntary payment" condition states that an insured may not make a voluntary payment without United Fire's consent. While the clause does not apply for the reasons discussed above, even if it did apply, United Fire was not prejudiced and its own claims manual mandates payment when it is not prejudiced.

United Fire's written claims handling policy recognizes that it will not deny claims because an insured failed to obtain consent to pay them, as long as liability existed, and the payment was reasonable. Page 165 of United Fire's Claims Handling Manual states:

> Occasionally, a policyholder will of his own volition settle a property damage claim. If, upon investigation, we find it to be a case where he was legally liable and payment was reasonable, it will be our obligation to reimburse the policyholder.

(SUF ¶ 56, underline added). If United Fire had done an actual investigation rather than find any pretext to deny the claim, it would have recognized that 1) Kinkaid was legally obligated to pay; and 2) the payment was reasonable.

In its denial letter, United Fire only asserts that "[t]o the extent Kinkaid voluntarily incurred any costs without United Fires consent, this was a breach of the Policy's voluntary payment clause and may relieve United Fire of an obligation to indemnify Kinkaid for such costs even if they would otherwise be covered." (SUF ¶ 57 and Exh. 17). However, United Fire identifies no prejudice resulting from Kinkaid's alleged violation and does not assert the payments were unreasonable. United Fire has produced no experts or discovery showing any prejudice from Kinkaid's alleged noncompliance.

In fact, Kinkaid incurred $357,765.70, in the damages after making the claim in this case, United Fire knew the claim was ongoing and did nothing. (SUF

¶ 44-45).  United Fire ignored continual pleas to adjust the claim by Kinkaid's

representatives while expenses continued to accrue.  (SUF ¶¶ 40-46).  United Fire

told Kinkaid and this Court that Kinkaid should seek damages from Western

National, which is exactly what Kinkaid attempted to do before bringing this claim

with United Fire.  (SUF ¶ 37-39).  United Fire now uses that attempt as a pretext to

deny the claim.

United Fire cannot show prejudice in this case.  In fixing this damage,

Kinkaid complied with its legal obligation to mitigate damages and it certainly

lessened damages that would occur if the subsidence was left unchecked while

United Fire took 18 months to adjust the claim.

For example, if Kinkaid had left the subsidence damage in place and a

motorcyclist was injured or died, Kinkaid and United Fire could have been held

liable. *See Schmidt v. Washington Contractors Grp., Inc.*, 1998 MT 194, ¶ 24, 290

Mont. 276, 964 P.2d 34, 40 (Highway contractor could be liable to injured

motorcyclist if height differential on off-ramp was unreasonable).

Given Kinkaid's legal duty to mitigate damages, United Fire could have

denied the claim if Kinkaid had not repaired the subsidence damages.  United Fire

clearly was not prejudiced by Kinkaid's repair of a freeway, railroad and frontage

road.  United Fire's denial letter states no prejudice and it has produced no

evidence of prejudice.  Accordingly, United Fire cannot deny the claim for failure

to comply with the "voluntary payment" condition.  *See Greytak*, 2015 MT at ¶ 14; (SUF ¶ 56).

     **c.**    **The "Voluntary Payments" Clause Is Void Under Montana Statutory Law and It Contravenes The Rule To Mitigate Damages**

        **i.**    **The Voluntary Payments Clause Is Void Because The Policy Does Not Comply With The Insurance Simplification Act**

The "voluntary payments" clause is void because it is not listed in the Table of Contents or Notice of Important Provision sections of the policy, which violates the Insurance Simplification Act.  *Montana Petroleum Tank Release Comp. Bd. v. Crumleys, Inc.*, 2008 MT 2, ¶ 53, 341 Mont. 33, 46, 174 P.3d 948, 959.  The Insurance Simplification Act requires that a policy provision that may defeat coverage otherwise available must highlight the provision in the Table of Contents and in a Notice of Important Provisions Section.  *Id.*

In *Crumley's* an insured discovered a petroleum leak from one of its storage tanks on February 25.  After the storage tank was dug up for a state investigation, the insured made a claim to its insurer on March 8.  On April 19, the insurer denied the claim for failure to comply with a 120-hour notice provision that was a condition to obtaining coverage.

The district court found coverage, in part because the notice provision was not highlighted in the insurance policy's Table of Contents or Notice of Important

Provisions sections. The Supreme Court affirmed, stating "[the insurer's] failure to highlight the 120-hour notice provision in a table of contents or notice section is a clear violation of § 33-15-337(2), MCA." It then voided the provision in the policy because "[c]ontract provisions which violate express statutes are contrary to public policy and void." It concluded, "the Endorsement's notice provision violates public policy, it is unnecessary to consider whether [the insured]'s notice was timely."

Just as in *Crumley's*, the "voluntary payment" clause is not highlighted in the Table of Contents or Notice of Important Provisions Section. While the listing of endorsements at the beginning of the policy may be construed as a Table of Contents, it does not "highlight" the "voluntary payment" clause. In addition, there is no Notice of Important Provisions section of the policy. *See* Doc. 20-3, and Exh. 3 to SUF at Exh. A).

Because the policy fails to "highlight" this important condition in a Table of Contents or Notice of Important Provisions Section, the provision is void as a matter of public policy and cannot bar coverage.

> **ii. The "Voluntary Payments" Clause Is Void Because It Requires An Insured To Violate Its Duty To Mitigate Damages**

Under Montana law, a "condition in a contract the fulfillment of which is impossible or unlawful . . . or which is repugnant to the nature of the interest

created by the contract is void." Mont. Code Ann. § 28-2-707. Here, the "voluntary payment" condition is unlawful and repugnant to the nature of the interest created by policy, because it prevents the insured from mitigating its damages and thus limiting both it and the insurance company's exposure.

When, under the specific circumstances of a case, a consent clause runs contrary to the purpose of the policy, it is void. *State Farm Mut. Auto. Ins. Co. v. Taylor*, 223 Mont. 215, 220, 725 P.2d 821, 824 (1986). In *Taylor*, the Montana Supreme Court analyzed whether a clause requiring an auto insurer's consent to settle with potentially liable parties as a condition to recover uninsured motorist coverage was void. It held that, under the circumstances of that case, the consent clause was void because the "central purpose of the clause is to provide uninsured motor vehicle coverage for which the insured has paid a premium." *Id.* The Montana Supreme Court discussed the fact that the purpose of the consent clause was to protect an insurance company's right to subrogation. Although an insurer could reserve a right to subrogation, the Supreme Court would "not allow the right to subrogation to negate the required offering of uninsured motor vehicle coverage." *Id.*

Here, the "voluntary payments" clause is essentially a consent clause. It requires an insured to obtain consent before making voluntary payments. (Doc. 20-3, p. 83). Likely, the purpose of the clause is to allow an insurance company

save itself money by reviewing and consenting to voluntary payments. Unlike a normal consent clause, which results in a release, noncompliance with a "voluntary payments" clause does not defeat an insurance company's ability to subrogate. That opportunity is still available. Just as in *Taylor*, the consent clause here is void because it not only defeats the purpose of the policy, but also the clause itself.

In addition, the "voluntary payments" clause requires Kinkaid to violate its legal duty to mitigate damages. Montana law requires a party to mitigate their damages. *Diede v. Davis*, 203 Mont. 205, 215, 661 P.2d 838, 843 (1983); *Arrowhead Sch. Dist. No. 75, Park Cty. v. Klyap*, 2003 MT 294, ¶ 55, 318 Mont. 103, 123, 79 P.3d 250, 264. In *Klyap*, the Montana Supreme Court held that a liquidated damages clause was unenforceable, because, *inter alia*, the liquidated damages clause might "defeat the purpose of the rule establishing an obligation to mitigate damages." *Id. at* ¶ 55.

Under the circumstances of this case, Kinkaid was legally obligated to make the repairs. To require Kinkaid to wait to repair the damages in order to preserve its insurance coverage would also "defeat the purpose of the rule establishing an obligation to mitigate damages." *Id. at* ¶ 55.

Accordingly, under the facts of this case, the "voluntary payments" clause is void. It defeats not only the purpose of the policy, but also the purpose of the

clause itself, and is contrary to the public policy requiring a party to mitigate its damages. Mont. Code Ann. § 28-2-707.

>    **d.**    **The Voluntary Payments Clause Violates Kinkaid's Reasonable Expectations Of Coverage When Working On Projects Involving Interstate Transportation**

"The objectively reasonable expectations" of insureds "regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." *Meadow Brook, LLP v. First Am. Title Ins. Co.*, 2014 MT 190, ¶ 15, 375 Mont. 509, 513, 329 P.3d 608, 611.

Here, Kinkaid was working on a civil construction project that required boring under interstate travel systems. (SUF ¶ 7). It informed United Fire of the project and confirmed coverage. (SUF ¶¶ 8-9). At that point, Kinkaid would reasonably expect coverage in the event of an accident that required immediate repair to a freeway, railroad and frontage road. The public's safety was at issue and Kinkaid was legally obligated to complete the repairs once the subsidence was discovered. Kinkaid did the right thing to protect the public and was justifiably surprised when its own insurance company did not recognize a duty to pay immediately and then, after 18 months, cited Kinkaid's failure to wait for consent to do the repairs as the reason for its denial. Kinkaid reasonably expected coverage for this exact situation and those expectations should be honored.

**2.    United Fire Waived Its Right To Deny The Subsidence Claim By Waiting 18 Months To Formally Adjust the Claim**

Under Montana law, when an insurer fails to give a timely denial setting forth its reasons for denying a claim, it waives its ability to deny claims for reasons that are given in an untimely manner. *Safeco Ins. Co. v. Ellinghouse*, 223 Mont. 239, 248, 725 P.2d 217, 223 (1986).

In *Ellinghouse*, Safeco Insurance Company formally denied a claim for the first time after providing a defense for 18 months without a reservation of rights in an underlying lawsuit. *Id.* at 219-220.  It informed its insured that it would continue to pay for its attorney, but that there would be no coverage for any judgment. *Id.* at 220.  It filed a declaratory judgment action over coverage. *Id.*

The Supreme Court held that under the doctrines of both waiver and estoppel, Safeco could not deny coverage when it had eighteen months to investigate the claim and failed to provide a formal denial during that time period. *Id.* at 222-223.  The Court noted:

> Safeco has the misconception that the mere filing of a declaratory judgment action somehow erases any possible wrongs which preceded or followed it. The filing of such an action does not erect a judicial shield against accountability.

*Id.* at 223.

In this case, 18 months after the notice of claim, United Fire finally provided a formal denial.  (SUF ¶ 57).  The denial admits that there are no exclusions that

apply to the subsidence damage and it distorts the facts and policy at issue to avoid its obligations.  (SUF ¶ 57 and Exh. 17 to SUF).

Here, just as in *Ellinghouse*, an insurer took too long to adjust the claim. Just as in *Ellinghouse*, the insurer assumed exclusive control of the defense in the underlying lawsuit when it appointed an attorney over the favored counsel of its insured.  United Fire did provide a Reservation of Rights regarding the lawsuit filed by Denny's, but did not issue a Reservation of Rights or a formal denial regarding the subsidence claim.  Eighteen months after the initial claim, United Fire issued a formal "denial" that reads as a reservation of rights letter and frequently states there "may not" be coverage.  (SUF ¶ 57 and Exh. 17 to SUF). United Fire's own claims handling manual requires that denials be sent via certified mail and that no other form of communication will suffice for a coverage determination.  (SUF ¶ 55).

Thus, just as in *Ellinghouse*, United Fire has waived its ability to deny coverage by failing to provide a formal denial for almost eighteen months. *See Ellinghouse*, 725 P.2d at 222-223.

> **3.** **United Fire Admits That No Exclusions Apply To The Subsidence Damage And, At Most, The Bore Or Main Replacement Cost Could Be Excluded**

No exclusions apply to the subsidence damages, as United Fire admits in its denial letter.  Instead United Fire cites exclusion j.5 and j.6 and states "While these

exclusions would not apply to the cost of repairing subsidence damage to adjacent property, exclusion j.5 may exclude coverage for the cost of constructing a new bore and/or purchasing and installing replacement pipe." Exclusions j.5 reads:

> (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations;

(Doc. 20-3, p. 24).

If United Fire did not waive its right to adjust the claim at all, then it can only utilize exclusions j.5 to deny the claim as to "that particular part" of the project that caused the damage to other property. *Roaring Lion, LLC v. Nautilus Ins. Co.*, No. CV 11-2-M-DWM-JCL, 2011 WL 3956132, at *7 (D. Mont. July 15, 2011), report and recommendation adopted, No. CV 11-2-M-DWM-JCL, 2011 WL 3955800 (D. Mont. Sept. 7, 2011). In *Roaring Lion*, Judge Lynch applied Montana law to determine that the same exclusions containing "that particular part" language applied only to the part of a cabin where defective work had occurred, rather than an entire cabin. *Id.*

United Fire's inability, after 18 months, to assert a cause of failure and pay the part of the claim it believes is due, again reinforces waiver. *Ellinghouse*, 715 P.2d at 223. However, if waiver does not apply, then United Fire should pay for the subsidence damage less the cost of the replacement bore and water main.

Thus, as United Fire has waived its right to deny the claim and no conditions or exclusions apply, Summary Judgment for the subsidence claim should be granted and the damages discussed below should be awarded.

**D.** **Subsidence Claim Damages Are $610,861.15 And Declaratory Judgment For Future Subsidence Damages Is Appropriate**

As demonstrated in discovery and the Affidavit of Ty Borum, damages for the subsidence claim amount to $610,861.15.  These include:

- **$405,085.92** in payments Kinkaid has made to subcontractors and/or material's suppliers.  (SUF ¶ 63).

- **$87,509.60** in labor and equipment cost Kinkaid expended in repairing the subsidence damages.  (SUF ¶ 63).

- **$118,265.63** mark-up for overhead for the labor/equipment cost.  (SUF ¶ 63)

If the Court finds that United Fire has waived its ability to deny this claim, it should award summary judgment on the subsidence claim in the amount of $610,861.15.

If waiver is not found, then summary judgment should be granted for $516,871.05 amount of damages, which is the subsidence claim less the bore and pipe replacement cost.  (SUF ¶ 64).  This is the amount of subsidence damages less $93,990.10 for the replacement water main and bore.  The replacement water main and bore actually cost $213,651.60.  (SUF ¶ 64).  However, Kinkaid is only

claiming $93,990.10 of that cost in subsidence damages because it withheld a $119,661.50 payment from Denny's over this issue and used that to pay the subcontractor for the replacement pipe (SUF ¶ 64).

Thus, partial summary judgment should be entered in the amount of $610,861.15 or $516,871.05 on Kinkaid's counterclaim for breach of contract. In addition, the Court should award ten percent interest from 60 days after the claim was made, which would start June 24, 2016, through the date of its Order pursuant to Montana Code Annotated § 33-18-232, as United Fire exceeded the time period allowable for adjusting a claim under Montana law when it failed to send a denial letter until 18 months after the claim was made.

Finally, for the same reasons that coverage exists, United Fire is also entitled to a declaration that any warranty work in the future (*See* SUF ¶ 65) regarding the subsidence damage will be covered by United Fire pursuant to 28 § U.S.C. 2201.

## VI.   CONCLUSION

For the reasons stated above, Partial Summary Judgment and Declaratory Judgment on Kinkaid's Subsidence Claim should be GRANTED. Partial Judgment should be entered for $610,861.15 or $516,871.05, plus interest, in favor of Kinkaid as well a declaration that future subsidence damages are covered. Kinkaid's bad faith case should then be set for trial.

DATED this 15th day of May, 2019.

WESTERN JUSTICE ASSOCIATES, PLLC

By: /s/ *Domenic A. Cossi*
  Domenic A. Cossi
  *Attorney for Defendant and*
   *Counterclaim Plaintiff*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(E), I certify that this brief is printed with a proportionately spaced Times New Roman text typeface of 14 points; is double-spaced (except that footnotes and quoted and indented material are single spaced); with left, right, top and bottom margins of 1 inch: and that the word count calculated by Microsoft Word 2011 for Mac is not more than 6,500 words.

DATED this 15th day of May, 2019.

WESTERN JUSTICE ASSOCIATES, PLLC

By: /s/ *Domenic A. Cossi*
  Domenic A. Cossi
  *Attorney for Defendant and*
   *Counterclaim Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of May, 2019, a true and correct copy of this document was served on the following person(s) by:

_1,2_       CM/ECF
\_\_\_\_\_       Hand Delivery
\_\_\_\_\_       Mail
\_\_\_\_\_       Overnight Delivery Service
\_\_\_\_\_       Fax
\_\_\_\_\_       E-Mail

1.      Clerk of U.S. District Court

2.      Katherine S. Huso
       MATOVICH, KELLER & HUSO, P.C.
       2812 1st Avenue North, Suite 225
       P.O. Box 1098
       Billings, MT 59103-1098
       khuso@mkhattorneys.com
       *Attorney for Plaintiff/Counter Defendant*

By: /s/ *Domenic A. Cossi*
      Domenic A. Cossi