Domenic A. Cossi
Jory C. Ruggiero
WESTERN JUSTICE ASSOCIATES PLLC
303 West Mendenhall Street Suite 1
Bozeman, MT 59715
(406) 587-1900
*domenic@westernjusticelaw.com*
*jory@westernjusticelaw.com*

*Attorneys for Defendant/Counterclaimant Kinkaid*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BILLINGS DIVISION

| | |
|---|---|
| UNITED FIRE & CASUALTY COMPANY,<br><br>Plaintiff/Counterclaim Defendant,<br><br>vs.<br><br>KINKAID CIVIL CONSTRUCTION LLC,<br><br>Defendant/Counterclaimant. | Cause No. DV-17-103-BLG-SPW-TJC<br><br><br>**DEFENDANT/COUNTERCLAIMANT KINKAID'S STATEMENT OF UNDISPUTED FACTS** |

In accordance with Rule 56.1(a), Local Rules of Procedure of the United States District Court for the District of Montana, Defendant/Counterclaimant Kinkaid, by and through his counsel of record, submit this Statement of Undisputed Facts in support of Defendant/Counterclaimant Kinkaid's Motion for Partial Summary Judgment on Counts I and II of Counterclaim.

1. Defendant/Counterclaimant Kinkaid Civil Construction, Inc. (Kinkaid) plans and installs civil infrastructure of all types. (Exh. 1, Aff. Ty Borum, ¶ 4, (May 10, 2019)).

2. Kinkaid was founded in Arizona in 2011 and expanded to Montana in 2015. (Exh. 1, Aff. Ty Borum, ¶ 3).

3. Kinkaid grew to employ 82 people in 2017 and was profitable every year until 2017. (Exh. 1, Aff. Ty Borum, ¶ 5; and Exh. 2, p. 17-20, First Supplemental Answer to Interrogatory No. 7 in *Defendant/Counterclaimant's First Supplemental Response to United Fire and Casualty Company's First Discovery Requests to Kinkaid Civil Construction,* dated February 14, 2019).

4. Kinkaid now employs 36 people and lost money in 2017 and 2018. (Exh. 1, Aff. Ty Borum, ¶ 6; and Exh. 2, p. 18, First Supplemental Answer to Interrogatory No. 7 in *Defendant/Counterclaimant's First Supplemental Response to United Fire and Casualty Company's First Discovery Requests to Kinkaid Civil Construction,* dated February 14, 2019).

5.      At all times relevant to this lawsuit, Kinkaid carried a Commercial General Liability (CGL) insurance policy with United Fire & Casualty Company (United Fire). (Exh. 3, Aff. Jake Grover, ¶ 5, (May, 8, 2019)).

6.      The Commercial General Liability Policy was procured by Jake Grover, an insurance broker and principal with Commercial West Insurance Agency.  (Exh. 3, Aff. Jake Grover, ¶ 5-12).

7.      In March 2016, the City of Billings issued for bidding the Contract Plans and Specifications for the City of Billings W.O. 16-07, Interstate 90 Water Main Crossing Project (the project).  The Interstate 90 Water Main Crossing Project would be approximately 3,020 lineal feet of 24-inch diameter trunk water main from the intersection of Gabel Road and South 24th Street to the intersection of Elysian Road and East Lane.  The project included a horizontal bore under Interstate 90, a railway and a frontage road.  (Exh. 1, Aff. Ty Borum, ¶ 7; and Exh. 4, Invitation to Bid, KINK 000168 through KINK 000173, produced in *Defendant/Counter-Claimant's Response to United Fire and Casualty Company's 1st Discovery Requests to Kinkaid Civil Construction*, dated October 5, 2018.)

8.      In early 2016, Jake Grover informed United Fire of Kinkaid's upcoming projects in Montana, including the Billings Water Main Project.  (Exh. 3, Aff. Jake Grover, ¶ 7).

9.   United Fire issued a revised declarations page in August of 2017, showing coverage and endorsements for the project in Montana under the CGL policy.  (Exh. 3, Aff. Jake Grover, ¶ 8).

10.   Kinkaid paid an additional revised premium of $11,419 based on the following business activities in which Kinkaid engages:

- Conduit Construction For MT
- Contractors Exec Supvrs For MT
- Contractors Subcontracted Work - MT
- Sewer Mains and Connections – MT
- Water Mains or Connections – MT

(Exh. 3, Aff. Jake Grover, ¶ 9).

11.   United Fire never sent Kinkaid an updated Montana declarations page after the Montana risk area was added to the policy.  (Exh. 1, Aff. Ty Borum, ¶ 10).

12.   United Fire never provided this Court with an updated declarations page or policy showing the Montana coverage and endorsements applicable to Montana.  (See Doc. 20-3, the Policy without the revised declarations page).

13.   On May 6, 2019, Jake Grover was able to locate the 2016 revised declarations page in his hard files.  A true and accurate copy of the revised declarations page showing coverage and endorsements "applicable to Montana." is

attached to Grover's Affidavit as Exhibit A.  (Exh. 3, Aff. Jake Grover and Exh. A to the Affidavit).

14. The endorsements "applicable to Montana" include "Comm General Liab Supplemental Decs-Addl Insureds."  (Exh. 3, Aff. Jake Grover and Exh. A to the Affidavit).

15. A true and accurate, but incomplete, copy of the CGL policy can be found at Doc. 20-3.

16. At a minimum, the CGL policy also includes the revised declarations page found in the Affidavit of Jake Grover at Exhibit A.  (Exh. A to Exh. 3, Aff. Jake Grover).

17. Neither the Policy nor the revised declarations page contains a choice of law provision.  (Doc. 20-3; and Exh. A to Exh. 3, Aff. Jake Grover).

18. On March 29, 2016, Kinkaid bid for the contract to build a water main under Interstate 90 in Billings, Montana. (Exh. 1, Aff. Ty Borum, ¶ 11; and Exh. 5, Bid Form, KINK 000464 through KINK 000477, produced in *Defendant/Counter-Claimant's Response to United Fire and Casualty Company's 1st Discovery Requests to Kinkaid Civil Construction*, dated October 5, 2018).

19. On April 25, 2016, Kinkaid was awarded the bid for the Billings Water Main Project.  (Exh. 1, Aff. Ty Borum, ¶ 12; Exh. 6, Agreement Form, KINK 000478 through KINK 000485, produced in *Defendant/Counter-Claimant's*

*Response to United Fire and Casualty Company's 1ˢᵗ Discovery Requests to Kinkaid Civil Construction*, dated October 5, 2018).

20. The contract with the City of Billings required Kinkaid to provide the following insurance:

```
                          CONTRACTOR'S INSURANCE GUIDE

Commercial General Liability
    _____   Occurrence Policy
    _____   Claims Made Policy (follow-up date _____)
    Each Occurrence................................................................$1,500,000.00
    General Aggregate Including Umbrella.....................................$3,000,000.00
    Products/Completed Operations Aggregate..............................$3,000,000.00
    Coverages
    _____   Premises/Operations
    _____   Products/Completed Operations
    _____   Contractual Liability
    _____   Underground
    _____   Explosion and Collapse        PER PROJECT AGGREGATE ENDORSEMENT
    _____   Blasting
    _____   Independent Contractors Coverages
    _____   Broad Form Property Damage
    _____   Personal Injury
    _____   Property Damaged Deductible (not to exceed $5,000.00) $_____
    _____   Railroad Protective Policy
                          Commercial Automobile
    _____   All-owned, adequate limits including umbrella...................$1,500,000.00
    _____   Hired Automobile Liability including umbrella....................$1,500,000.00
    _____   Non-Owned Automobile Liability including umbrella............$1,500,000.00
                          Workers' Compensation
    _____   Occupational Accident/Disease............................................Statutory
    _____   Employer's Liability including umbrella..............................$1,500,000.00
            (Attach certificate)
                          Other Requirements
    _____   Company Rating (A.M. Best) B+ VI or Better
    _____   30-Day Cancellation Clause
                          Additional Insured's
    _____   Owner/Architect/Engineer Named as Additional Insured (City of Billings requires
            that they be named as an additional primary and non-contributory insured.)
Owners and Contractors Protective
    _____   $1,000,000.00 Each Occurrence, $2,000,000.00 Aggregate
            Circle One (Endorsement) or (Separate Policy)
            A separate policy shall have the City of Billings as the named insured. Attach
            Certificate to this checklist.




                                      CIC-1
                                                              KINK 000492
```

(Exh. 7, Contractor's Insurance Guide, KINK 000492, produced in *Defendant/Counter-Claimant's Response to United Fire and Casualty Company's 1st Discovery Requests to Kinkaid Civil Construction*, dated October 5, 2018).

21. Kinkaid's contract with the City of Billings confirmed that Billings was and additional insured. The applicable "certificate of liability" indicated:

> The City of Billings W.O. 16-07, Interstate 90 Water Main Crossing Project. Intersection of Gabel Rd & South 24th St to Intersection of Elysian Rd and East Lane. City of Billings, Sanderson Stewart and Architect are included as additional insured for general liability and auto liability as required by written contract per policy terms and conditions. Insurance is primary and non-contributory where required by written Contract. Umbrella is follow form. Waiver of subrogation applies to general liability, auto liability and workers compensation in favor of the certificate holder and where required by written contract.

(Exh. C attached to Exh. 3, Aff. Jake Grover, ¶ 12).

22. Because the water main project travelled under a freeway, railroad and frontage road, horizontal drilling was required to prevent interruptions in interstate commerce and travel. (Exh. 1, Aff. Ty Borum, ¶ 14; Exh. 4, Invitation to Bid, at KINK 172; and Exh. 8, Fusible Polyvinyl Chloride Pipe Installation by Horizontal Directional Drilling (HDD) or as Carrier Pipe for Jack and Bore, KINK 000264 through KINK 000283, produced in *Defendant/Counter-Claimant's Response to United Fire and Casualty Company's 1st Discovery Requests to Kinkaid Civil Construction*, dated October 5, 2018).

23. Kinkaid's contract with the City of Billings contained the following requirements that Kinkaid repair any damage caused to roads or by subsidence:

> The pipe shall be installed in a manner that does not cause upheaval, settlement, cracking, or movement and distortion of surface features. Any damages caused by the Contractor's operations shall be corrected by the Contractor. (KINK 280).

> The Contractor shall protect and in the case of any damage repair the existing structures, concrete, or other property at the Contractor's expense. Any fences destroyed during construction shall be repaired to satisfaction of the Owner. Any delay, additional work, or extra cost to the Contractor caused by existing underground installations shall not constitute a claim for extra work, additional payment, or damages. (KINK 223).

(Exh. 8, Fusible Polyvinyl Chloride Pipe Installation by Horizontal Directional Drilling (HDD) or as Carrier Pipe for Jack and Bore, at KINK 280; and Exh. 9, Special Provisions, at KINK 223, produced in *Defendant/Counter-Claimant's Response to United Fire and Casualty Company's 1st Discovery Requests to Kinkaid Civil Construction*, dated October 5, 2018).

24. Kinkaid subcontracted with Denny's Electric & Motor Repair, Inc. (Denny's) to conduct the horizontal drilling under the roadways and railroad (the bore) and pull the water main through the bore. (Exh. 1, Aff. Ty Borum, ¶ 15; and Exh. 10, Kinkaid Civil Construction Master Subcontract Agreement and Addendums, KINK 000602 through KINK 000631, produced in

*Defendant/Counter-Claimant's Response to United Fire and Casualty Company's 1st Discovery Requests to Kinkaid Civil Construction*, dated October 5, 2018).

25. Denny's began the bore on July 18, 2016. On August 1, 2016 it completed the bore, but did not insert the pipe for the water main through the bore. (Exh. 1, Aff. Ty Borum, ¶¶ 16-17; and ECF Doc 20, Plaintiff/Counterclaim Defendant's Supplemental Complaint for Declaratory Judgment, ¶ 7(c), filed November 28, 2017).

26. Due to Denny's leaving the job, Kinkaid inserted the water pain into the casing. (Exh. 1, Aff. Ty Borum, ¶ 17).

27. On August 8, 2016, Kinkaid conducted a hydrostatic pressure test of the water main, in which pressurized water was run into the pipe at 200 psi. The pipe had to hold for 2 hours. Unfortunately, it did not. The water main failed and collapsed. (Exh. 1, Aff. Ty Borum, ¶ 18).

28. Kinkaid immediately notified the authorities of the failure. This included railroad, federal and state highway and railway authorities, as well as the City of Billings. (Exh. 1, Aff. Ty Borum, ¶ 19).

29. Kinkaid also immediately notified its insurance agent, Jake Grover, of the failure and likely subsidence. (Exh. 1, Aff. Ty Borum, ¶ 20; and Exh. 3, Aff. Jake Grover, ¶ 13-14).

30. One of the methods that United Fire allows for notification of a claim is by an insured notifying their insurance agent. *See* https://www.ufginsurance.com/report-a-claim. (Exh. 1, Aff. Ty Borum, ¶ 21).

31. On August 22, 2016, Jeff Heidner, with Sanderson Stewart, the project engineer overseeing the project, notified Kinkaid of subsidence to the freeway and frontage road and Kinkaid began a plan to repair it. (Exh. 1, Aff. Ty Borum, ¶ 22, and Exh. A attached to the Affidavit, at p. 3, KINK 002145).

32. Also on August 22, 2016, the Montana Rail Link Master completed an inspection of the railroad, notified Kinkaid of the subsidence and that the subsidence had to be corrected for safety reasons. (Exh. 1, Aff. Ty Borum, ¶ 23, and Exh. A attached to the Affidavit, at p. 4, KINK 001778).

33. Pursuant to its contract with the City of Billings, Kinkaid set about repairing the subsidence, as a failure to do so would result in thousands of dollars in damages a day to the railroad and highway departments and could result in significant injuries and property damage if any accidents occurred due to the subsidence. (Exh. 1, Aff. Ty Borum, ¶ 25).

34. On November 22, 2016, the Montana Department of Transportation informed the project engineer that Interstate 90 would need to be "leveled as soon as a contractor is available," who then informed Kinkaid of the requirement. (Exh.

1, Aff. Ty Borum, ¶ 24, and Exh. A attached to the Affidavit, at p. 24, KINK 002146).

37. Kinkaid complied with its obligations and fixed the subsidence to the railroad, I-90 and the frontage road as required by various authorities. (Exh. 1, Aff. Ty Borum, ¶ 25).

36. Failure to repair the damages and finish the project would also result in liquidated damages of $1,500 a day. (Exh. 1, Aff. Ty Borum, ¶ 26; and Exh. 6, Agreement Form, page 2, 4.03 Liquidated Damages, ¶ A, KINK 000478 through KINK 000485, produced in *Defendant/Counter-Claimant's Response to United Fire and Casualty Company's 1st Discovery Requests to Kinkaid Civil Construction*, dated October 5, 2018).

37. Kinkaid and Jake Grover, believing the failure was due to Denny's failures or omissions, submitted a claim to Western National Mutual Insurance Company (Western National), Denny's insurance carrier. (Exh. 1, Aff. Ty Borum, ¶ 27; Exh. 3, Aff. Jake Grover, ¶¶ 15-16; and Exh. 11, e-mail to Christina Maynard of September 29, 2016, KINK-UF 000031 through KINK-UF 000032, produced in *Defendant/Counter-Claimant's Response to United Fire and Casualty Company's 1st Discovery Requests to Kinkaid Civil Construction*, dated October 5, 2018).

38. Western National denied the request for coverage for the subsidence repair on January 13, 2017, but also asked for more information to evaluate the claim. (Exh. 1, Aff. Ty Borum, ¶ 28).

39. Kinkaid provided that information, but Western National denied the claim again on April 26, 2017. (Exh. 1, Aff. Ty Borum, ¶ 29; and Exh. 12, KINK-UF 000139 through KINK-UF 000146, produced in *Defendant/Counter-Claimant's Response to United Fire and Casualty Company's 1st Discovery Requests to Kinkaid Civil Construction*, dated October 5, 2018).

40. Foreseeing Western National's denial, Grover recommended that Kinkaid turn to United Fire, as its insurer, and submitted a claim on April 24, 2017 (hereinafter referred to as the subsidence claim). (Exh. 1, Aff. Ty Borum, ¶ 30; Exh. 3, Aff. Jake Grover, ¶ 18-19; and Exh. 13, General Liability Notice of Occurrence/Claim, KINK-UF 000001- KINK-UF 000002, produced in *Defendant/Counter-Claimant's Response to United Fire and Casualty Company's 1st Discovery Requests to Kinkaid Civil Construction*, dated October 5, 2018).

41. United Fire acknowledged the claim on April 24, 2017. (Exh. 1, Aff. Ty Borum, ¶ 33, and Exh. B attached to the Affidavit, at pp. 6-21; and Exh. 3, Aff. Jake Grover, ¶ 20).

42. In conjunction with making the claim, Jake Grover emailed documentation of Kinkaid's subsidence damages to Craig Hetland with United Fire

and informed United Fire that those damages were ongoing. (Exh. 3, Aff. Jake Grover, and Exh. D attached to the Affidavit).

43. Despite United Fire's acknowledgment and the ongoing nature of the repairs, United Fire did not affirm or deny coverage for the claim. (Exh. 1, Aff. Ty Borum, ¶ 34; and Exh. 3, Aff. Jake Grover, ¶ 22-23).

44. Between May and August 2017, Kinkaid incurred an additional $357,765.70 in subsidence related damages. (Exh. 1, Aff. Ty Borum, ¶ 36).

45. United Fire never sent an adjuster to the construction site or advised Kinkaid that it could not continue with the required construction as a condition of coverage. (Exh. 1, Aff. Ty Borum, ¶ 37; and Exh. 3, Aff. Jake Grover, ¶ 23).

46. Kinkaid, Kinkaid's attorneys and Jake Grover corresponded with United Fire multiple times requesting coverage and direction on the subsidence claim. (Exh. 1, Aff. Ty Borum, ¶ 38, and Exh. B attached to the Affidavit; Exh. 3, Aff. Jake Grover, ¶¶ 21-24, and Exh. D and E attached to the Affidavit; and Exh. 14, KINK-UF 000016-29 produced in *Defendant/Counter-Claimant's Response to United Fire and Casualty Company's 1st Discovery Requests to Kinkaid Civil Construction*, dated October 5, 2018 and KINK-UF 531-532 and KINK-UF 536-537 *Defendant/Counter-Claimant's Second Supplemental Response to United Fire and Casualty Company's 1st Discovery Requests to Kinkaid Civil Construction,* dated March 1, 2019).

47. United Fire changed adjusters handling the claim multiple times and did not affirm or deny coverage in April, May, June, July or August 2017 while the required construction was occurring. (Exh. 1, Aff. Ty Borum, ¶ 39).

48. On March 13, 2017, Denny's sued Kinkaid for payment (hereinafter referred to as the Denny's claim). Kinkaid submitted the lawsuit to United Fire for a defense. United Fire hired an attorney to represent Kinkaid. (Exh. 1, Aff. Ty Borum, ¶ 40; and ECF Doc 14, Statement of Stipulated Facts, at ¶¶ 2, 4-6, filed October 17, 2017).

49. On July 31, 2017, United Fire filed this action to dispute its duty to defend that lawsuit. (Exh. 1, Aff. Ty Borum, ¶ 41; and ECF Doc. 1).

50. On August 29, 2017 Kinkaid counterclaimed for United Fire's failure to adjust the subsidence claim. (Exh. 1, Aff. Ty Borum, ¶ 42; and ECF Doc 4, Defendant's Answer to Plaintiff's Complaint for Declaratory Judgment, Counterclaim and Request for Trial By Jury).

51. On November 3, 2017, January 16, 2018, February 7, 2018, April 30, 2018, October 15, 2018 and October 25, 2018, Kinkaid's attorneys implored United Fire to provide the coverage available in the policy. (Exh. 14, KINK-UF 000016-29 produced in *Defendant/Counter-Claimant's Response to United Fire and Casualty Company's 1st Discovery Requests to Kinkaid Civil Construction*, dated October 5, 2018 and KINK-UF 531-532 and KINK-UF 536-537

*Defendant/Counter-Claimant's Second Supplemental Response to United Fire and Casualty Company's 1st Discovery Requests to Kinkaid Civil Construction,* dated March 1, 2019).

52. In the November 3, 2017 correspondence, Kinkaid offered to assign United Fire any claims against Denny's Insurer, Western National. (Exh. 14, KINK-UF 531-532, produced in *Defendant/Counter-Claimant's Second Supplemental Response to United Fire and Casualty Company's 1st Discovery Requests to Kinkaid Civil Construction,* dated March 1, 2019).

53. This Court set a Scheduling Order on October 24, 2017. (ECF Doc 17, Scheduling Order, filed October 24, 2017).

54. The parties conducted discovery and submitted expert reports on September 14, 2018 pursuant to ECF Doc 17, Scheduling Order, filed October 24, 2017, and Kinkaid provided a supplemental expert report on March 29, 2019 as KINK-UF 635 through 642 produced in *Defendant/Counter-Claimant's Third Supplemental Response to United Fire and Casualty Company's 1st Discovery Requests to Kinkaid Civil Construction,* dated March 29, 2019. (Exh. 15, Defendant's Expert Witness Disclosure, dated September 14, 2018 and Supplemental Expert Report, dated March 18, 2019).

55. United Fire's claims handling manual requires that adjusters provide written claims determinations via certified mail and no other form of

communication will suffice for a claims determination. (Exh. 16, United Fire's Claims Manual, at 124).

56. United Fire's claims handling manual states that "Occasionally, a policyholder will of his own volition settle a property damage claim. If, upon investigation, we find it to be a case where he was legally liable and payment was reasonable, it will be our obligation to reimburse the policyholder." (Exh. 16, United Fire's Claims Manual, at 165).

57. United Fire failed to provide a formal denial of the subsidence claim until November 21, 2018, after the close of discovery. (Exh. 1, Aff. Ty Borum, ¶ 43; and Exh. 17, KINK-UF 538 through KINK-UF 548, produced in *Defendant/Counter-Claimant's Second Supplemental Response to United Fire and Casualty Company's 1st Discovery Requests to Kinkaid Civil Construction,* dated March 1, 2019).

58. Kinkaid's attorneys then determined they were witnesses to United Fire's ongoing bad faith and Kinkaid found new attorneys. (Exh. 1, Aff. Ty Borum, ¶ 44; and ECF Doc 33, Defendant's Notice of Substitution of Counsel, filed January 10, 2019).

59. The parties agreed to vacate the remaining schedule so Kinkaid's new attorneys could get up to speed. (ECF Doc 34, Plaintiff's Unopposed Motion to Vacate Scheduling Order, filed January 10, 2019).

60. United Fire also indicated that it intended to add Western National as a third-party Defendant. The Court gave it until February 1, 2019 to make its Motion to Amend. (ECF Doc 37, Order, filed January 17, 2019).

61. United Fire did not make the Motion to Amend. (ECF Doc 38, Plaintiff's Unopposed Motion to Establish New Scheduling Order, filed March 11, 2019).

62. Kinkaid recently supplemented discovery as its year-end financial situation was reconciled. Kinkaid closed 2018 with 36 employees, down from 82 in 2017. Kinkaid has lost millions of dollars and people have lost their jobs due to United Fire's failure to timely and correctly adjust the subsidence claim. (Exh. 1, Aff. Ty Borum, ¶ 45; and Exh. 2, pp. 17-20, *Defendant/Counter-Claimant's First Supplemental Response to United Fire and Casualty Company's 1st Discovery Requests to Kinkaid Civil Construction,* Interrogatory No. 7 and First Supplemental Answer to Interrogatory No. 7).

63. To date, Kinkaid has incurred the following expenses on subsidence related repairs:

- **$405,085.92** in payments Kinkaid has made to subcontractors/material's suppliers.

- **$87,509.60** in labor and equipment cost Kinkaid expended in repairing the subsidence damages.

- **$118,265.63** mark-up for overhead for the labor/equipment cost.

(Exh. 1, Aff. Ty Borum, ¶ 46).

64. Of the subsidence related repairs:

- 93,990.10 is the cost of the replacement water main and bore. The cost of the replacement bore was actually $213,651.60. The cost claimed by Kinkaid this lawsuit reflects a subtraction of the Denny's contractual amount because that amount was withheld due to Denny's breach of contract and used to pay Drillrite for the replacement bore.

(Exh. 1, Aff. Ty Borum, ¶ 47).

65. Kinkaid also may have to do warranty work on the subsidence damages in the future. (Exh. 1, Aff. Ty Borum, ¶ 48).

DATED this 15th day of May, 2019.

>WESTERN JUSTICE ASSOCIATES, PLLC
>
>By: /s/ *Domenic A. Cossi*
>   Domenic A. Cossi
>   *Attorney for Defendant and*
>     *Counterclaim Plaintiff*

# CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of May, 2019, a true and correct copy of this document was served on the following person(s) by:

| | |
|---|---|
| _1,2_ | CM/ECF |
| _____ | Hand Delivery |
| _____ | Mail |
| _____ | Overnight Delivery Service |
| _____ | Fax |
| _____ | E-Mail |

1. Clerk of U.S. District Court

2. Katherine S. Huso
   MATOVICH, KELLER & HUSO, P.C.
   2812 1st Avenue North, Suite 225
   P.O. Box 1098
   Billings, MT  59103-1098
   khuso@mkhattorneys.com
   *Attorney for Plaintiff/Counter Defendant*

By: /s/ *Domenic A. Cossi*
Domenic A. Cossi