Katherine S. Huso
MATOVICH, KELLER & HUSO, P.C.
2812 1st Avenue North, Suite 225
P.O. Box 1098
Billings, MT  59103-1098
(406) 252-5500 Phone
(406) 252-4613 Fax
khuso@mkhattorneys.com

*Attorney for Plaintiff United Fire & Casualty Company*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED FIRE & CASUALTY COMPANY,<br><br>    Plaintiff/Counterclaim Defendant,<br><br>vs.<br><br>KINKAID CIVIL CONSTRUCTION LLC,<br><br>    Defendant/Counterclaim Plaintiff. | CV-17-103-BLG-SPW-TJC<br><br>**UNITED FIRE & CASUALTY COMPANY'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

This is an insurance coverage dispute arising out of an underlying lawsuit filed in Montana state court against Kinkaid Civil Construction LLC ("Kinkaid"). The claims asserted against Kinkaid are based on its alleged failure to pay two

subcontractors for services and materials furnished in connection with a construction project.

At the time of the events alleged in the underlying complaint, Kinkaid was insured under a commercial general liability policy issued by United Fire & Casualty Company ("United Fire"). United Fire is defending Kinkaid in the underlying action under a reservation of rights. In this declaratory judgment action, United Fire seeks a ruling that it has no further duty to defend Kinkaid in the underlying lawsuit. The insurance policy undisputedly does not provide coverage for damages arising out of Kinkaid's failure to pay its subcontractors. Therefore, United Fire is entitled to judgment as a matter of law.

## I. The Underlying Lawsuit

The underlying lawsuit was filed in March 2017, by Denny's Electric & Motor Repair Inc. ("Denny's"). United Fire's Statement of Undisputed Facts, ¶ 6. Denny's alleges that in April 2016, the City of Billings contracted with Kinkaid to provide labor, materials and construction services for a water main project (the "Project"). *Id*. at ¶¶ 7-8. Kinkaid subcontracted with Denny's to perform horizontal directional drilling and boring work on the Project for a total payment of $119,661.50. *Id*. Denny's alleges it worked on the Project from approximately July 18, 2016 through August 1, 2016, and completed the work called for in the subcontract. *Id*. Shortly after Denny's left the jobsite, Kinkaid installed 24-inch

carrier pipe and conducted a pressure test. *Id*. During the pressure test, the carrier pipe suffered a catastrophic failure, resulting in damage to the casing and bore and subsidence on I-90, the frontage road, and railroad tracks. *Id*. Denny's alleges that Kinkaid wrongfully blamed Denny's for the carrier pipe failure, and has refused to pay Denny's for the work it performed on the Project. *Id*. Denny's seeks damages of at least $119,661.50 for amounts owed under the subcontract; attorney's fees and costs; and interest. *Id*. at ¶ 9.

Core & Main LP has also asserted claims against Kinkaid in the underlying lawsuit. *Id*. at ¶ 10. Core & Main alleges it sold underground water, sewer, and fire protection materials to Kinkaid in connection with the Project, and that Kinkaid has failed to pay the amounts owed under the contract. *Id*. at ¶ 11. Core & Main seeks damages from Kinkaid in the amount of $447,150.19, plus interest. *Id*. at ¶ 12.

United Fire is defending Kinkaid in the underlying lawsuit under a reservation of rights. *Id*. at ¶ 14. The underlying lawsuit is currently pending in the Montana Thirteenth Judicial District, Yellowstone County. *Id*.

## II. United Fire Policy

Kinkaid was the named insured under Policy No. 60443715 issued by United Fire ("the Policy"), effective March 15, 2016, to March 15, 2017. *Id*. at ¶ 1. The Policy states that United Fire "will pay those sums that the insured becomes

legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." *Id*. at ¶ 3. The Policy also states that the insurance applies only if the "bodily injury" or "property damage" is caused by an occurrence." *Id*.

"Property damage" is defined in the Policy as "physical injury to tangible property, including all resulting loss of use of that property" or "loss of use of tangible property that is not physically injured." *Id*. at ¶ 5. "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id*. at ¶ 4.

## LEGAL STANDARD

A party is entitled to summary judgment if it demonstrates "that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate where the evidence produced by the parties permits only one conclusion. *Mont. Pub. Interest Research Group (MontPIRG) v. Johnson*, 361 F. Supp. 2d 1222, 1226-27 (D. Mont. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

If the moving party shows that the evidence does not permit a conclusion in favor of the nonmoving party, the burden shifts to the nonmoving party. The party opposing the motion "may not rest upon the mere allegations or denials of [its]

pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. The Court looks to "whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law." *MontPIRG*, 361 F. Supp. 2d at 1227 (citing *Anderson*, 477 U.S. at 251-52).

## ARGUMENT

An insurer's duty to defend its insured arises when a complaint alleges facts which, if proven, represent a risk covered by the terms of an insurance policy. *Farmers Union Mut. Ins. Co. v. Staples*, 2004 MT 108, ¶ 21. "The insurance company must look to the allegations of a complaint to determine if coverage exists under an insurance policy, thus giving rise to the insurer's duty to defend." *Id*. at ¶ 20. When a complaint alleges facts that do not come within the coverage of the policy, and the insurer would not be obligated to indemnify the insured if the complaining party recovered, then the insurer has no duty to defend. *Graber v. State Farm Fire & Casualty Co.*, 244 Mont. 265, 270, 797 P.2d 214, 217 (1990).

The insured has the initial burden of establishing that the claims against it fall within the basic scope of coverage. *Fire Ins. Exch. v. Weitzel*, 2016 MT 113, ¶ 13 (citing *Travelers Cas. & Sur. Co. v. Ribi Immunochem Research*, 2005 MT 50, ¶ 29).

In this case, the undisputed evidence demonstrates that United Fire has no

duty to defend Kinkaid in the underlying lawsuit. Neither Denny's nor Core & Main seek damages from Kinkaid *because of* "bodily injury" or "property damage" caused by an "occurrence." Instead, both parties seek to recover money allegedly owed by Kinkaid for work and/or materials furnished in connection with the water main Project. Such damages unequivocally do not fall within the scope of the Policy's coverage. Therefore, United Fire is entitled to a declaration that it does not have a duty to continue providing a defense to Kinkaid in the underlying lawsuit.

I.  **The underlying lawsuit does not seek damages from Kinkaid because of "bodily injury" or "property damage" caused by an "occurrence."**

The Policy provides coverage for damages because of "bodily injury" or "property damage" caused by an "occurrence." It does not provide coverage for damages caused by an insured's failure to pay money owed to a subcontractor.

It is well-settled in Montana that there is no duty to defend where the complaint alleges economic loss based on the insured's breach of its contractual obligations. *Generali-U.S. Branch v. Alexander*, 2004 MT 81; *City of Bozeman v AIU Ins. Co.*, 262 Mont. 370, 865 P.2d 268 (1993). In *Generali*, the underlying complaint alleged that the insured failed to install a functioning plumbing and heating system at the plaintiffs' property. *Id*. at ¶ 22. The plaintiffs alleged they were damaged in the amounts they had paid to the insured and sought a refund. *Id*. The Montana Supreme Court concluded that the insurer had no duty to defend, as

the plaintiffs only sought compensation for "lost payments" for work that was never performed—not damages because of physical injury to their property. *Id*. at ¶¶ 25-26.

Likewise, in *City of Bozeman*, the Montana Supreme Court found that the insurer had no duty to defend its insured in a lawsuit where the alleged injury arose out of the insured's breach of a construction contract. 262 Mont. at 373, 865 P.2d at 270. The underlying complaint alleged that the plaintiff had contracted with the City to construct water main improvements; that the City subsequently tried to alter the terms of the contract; that the City breached the terms of the contract; and that the City still owed the plaintiff $230,747.17 under the contract. *Id*. While the insurer initially had a duty to defend the lawsuit because a potentially covered defamation claim had also been asserted, it was not obligated to continue defending the City once the defamation claim was dismissed because the breach of contract allegations were not covered under the policy. *Id*. Also see, *Royce Intern. Broad. Corp. v. Vigilant Ins. Co.*, 51 Fed. Appx. 229, 230 (9th Cir. 2002) (unpublished) (concluding that the insured's alleged failure to follow through with sale of radio station was not accidental, and thus buyer's breach of contract claim against insured was not a covered "occurrence" under its CGL policy).

Both *Generali* and *City of Bozeman* are directly on point, as they involved claims for damages based on the insured's alleged failure to perform contractual

obligations and not because of property damage caused by the insured. All of Denny's claims are based on Kinkaid's failure to pay the amount allegedly owed for work performed under the subcontract. Likewise, Core & Main's claims are based on Kinkaid's failure to pay the amount allegedly owed for pipe and other materials purchased for the Project. Neither Denny's nor Core & Main seek damages for property damage they contend was caused by Kinkaid. The allegations that Kinkaid owes money to its subcontractors do not fall within the scope of the Policy's coverage.

II. **Denny's allegations pertaining to property damage do not trigger a duty to defend because it is not seeking damages from Kinkaid *because of* the alleged property damage.**

Denny's Amended Complaint alleges Kinkaid was responsible for the failure of the carrier pipe, which resulted in damage to the casing and bore as well as ground subsidence. It does not, however, allege how this actually caused damage to Denny's. Indeed, Denny's only seeks recovery of the amount owed by Kinkaid under the subcontract ($119,661.50).

Conclusory allegations of property damage in a complaint, without supporting factual allegations, do not trigger a duty to defend. *PPI Technology Services, L.P. v. Liberty Mut. Ins. Co.*, 515 Fed.Appx. 310, 314 (5th Cir. 2013) (unreported). In *PPI Technology Services*, the insured was hired to oversee well drilling activities on three leases. *Id*. at 312. After a well was dug on the wrong

lease, Royal filed suit against the insured seeking recovery of the amounts expended due to the well being drilled in the wrong location. *Id*. The complaint also alleged that the insured had caused property damage to Royal, including "physical injury to tangible property" and "all resulting loss of use of the property." *Id*. The Fifth Circuit Court of Appeals held that the mere reference to "property damage" in the complaint was insufficient to trigger the insurer's duty to defend because the complaint did not allege facts supporting actual damage to or loss of tangible property. *Id*. at 314. "The allegations in the underlying lawsuits [were] either for economic damages [associated with drilling a well in the wrong location], and thus not covered, or [were] legal conclusions, rather than factual allegations as required." *Id*. Because there was no claim against Royal for property damage, the Court found it unnecessary to reach the issue of whether the alleged damages were caused by an "occurrence" or whether any of the policy's exclusions applied. *Id*. Also see, *Town of Geraldine v. Montana Mun. Ins Authority*, 2008 MT 411, ¶ 24 ("it is the acts giving rise to the complaint which form the basis for coverage, not the complaint's legal theories or conclusory language").

According to a leading insurance treatise, the relevant inquiry is whether the damages sought against the insured are *because of* that property damage.

> [T]he issue is whether the damages sought against the insured are because of property damage, not whether the insured itself incurred

property damage.  Similarly, it is not enough that the party suing the insured has incurred property damage; *the damages being sought must be because of that property damage*.  And the issue is not whether the insured could be sued for such damages, but whether it *is* being sued for such damages. [emphasis added]

*See generally*, 3 Allan D. Windt, Insurance Claims & Disputes: Representation of Insurance Companies & Insureds § 11:1 (5th ed. 2010).

While there are no Montana decisions addressing this issue, the decisions from other courts that *have* analyzed this issue are instructive.  In *State Farm Lloyds v. Kessler*, 932 S.W.2d 732 (Tex. App. Fort Worth 1996), a lawsuit was filed against the insureds for allegedly misrepresenting the condition of their home prior to selling it to the plaintiffs.  *Id*. at 734.  The plaintiffs alleged that the insureds told them the property had no drainage or foundation problems, when in fact it had severe drainage and foundation problems, to induce them into purchasing the property.  *Id*.  The Texas Court of Appeals held that although the complaint described property that had been physically injured, State Farm had no duty to defend or indemnify its insureds because these problems were not "property damage" for which the insureds were alleged to be liable.  *Id*. at 737.  The plaintiffs did not seek damages because of drainage and foundation problems caused by the insureds; instead, they were seeking damages because of the insureds' *misrepresentations* regarding these problems.  *Id.*

In *Unigard Sec. Ins. Co. v. Murphy Oil USA, Inc.*, 962 S.W.2d 735 (Ark. 1998), Murphy leased property from Blakely for the purpose of operating a petroleum-storage facility. *Id*. at 736. Three major oil spills occurred at the facility during the term of the lease, causing large quantities of oil to seep into the ground. *Id*. at 737. Murphy eventually ceased operations and surrendered the property to Blakely without informing it of the oil spills. *Id*. Blakely filed suit against Murphy, alleging it breached the lease by allowing contaminants to escape onto the property and by failing to surrender the premises in the same condition they were in when the lease began. *Id*. The complaint alleged claims for breach of contract and trespass. *Id*. The jury awarded $3.4 million on the breach of contract claim based on evidence that this represented the cost of removing the contamination. *Id*. at 738. Murphy then sought indemnification for the judgment from Unigard. *Id*. The Unigard policy provided coverage for "all sums the [insured] shall be obligated to pay by reason of the liability imposed upon the [insured] by law…for damages…on account of…property damage…caused by or arising out of each occurrence[.]" *Id*. at 739. The Arkansas Supreme Court held there was no coverage for the $3.4 million judgment, as such damages arose only from *Murphy's breach of its lease with Blakely*—not on account of any property damage that resulted from Murphy's operations on the island. *Id*.

> The basis of Murphy Oil's liability for compensatory damages was simply its failure to honor its covenant to "quit and surrender the

> premises hereby demised in as good state and condition as reasonable usage thereof will permit." Murphy Oil's liability for compensatory damages, therefore, did not arise from conduct on the part of Murphy Oil that injured or damaged any property.

*Id*. at 741.

The above cases make clear that mere allegations of property damage in a complaint do not trigger a duty to defend unless damages are actually sought from the insured *because of* that property damage. In this case, while Denny's alleges that Kinkaid's negligence in installing, pressurizing and/or testing the carrier pipe caused physical injury to the pipe and bore, which in turn caused damage to Denny's, it does not explain what that damage is. For example, Denny's does not allege that it incurred any costs because it was required to repair the carrier pipe, casing or bore, or redo its work. Nor does Denny's allege that it was obligated to pay the City or any other third party to repair the subsidence damage to I-90, the frontage road, or railroad tracks. The information provided to United Fire reflects that it was actually Kinkaid—not Denny's—who incurred costs to repair the subsidence damage.[1]

The Amended Complaint fails to allege that Denny's actually incurred damages because of, or on account of, any property damage. Like the claim brought against the insured in *PPI Technology Services*, Denny's is only seeking compensation for economic damages as a result of Kinkaid's breach of the

---
[1] See Statement of Stipulated Facts (Doc. 14), ¶¶ 8-9.

subcontract—nothing more. Therefore, Denny's allegations pertaining to property damage in its Amended Complaint are insufficient to trigger a duty to defend.

## **CONCLUSION**

For the reasons discussed in this brief, United Fire requests that the Court grant summary judgment in its favor and conclude that it is not obligated to continue defending Kinkaid in the underlying lawsuit.

DATED this 15th day of May, 2019.

                                              MATOVICH, KELLER & HUSO, P.C.

                                              By: /s/ Katherine S. Huso
                                                     Katherine S. Huso
                                                     *Attorney for Plaintiff United Fire &*
                                                     *Casualty Company*

# CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of May, 2019, a copy of the foregoing was served on the following persons by the following means:

| | | | |
|---|---|---|---|
| 1, 2 | CM/ECF | _____ | Fax |
| _____ | Hand Delivery | _____ | Email |
| _____ | Mail | _____ | Overnight Delivery Service |

1. Clerk, U.S. District Court, Billings Division

2. Domenic A. Cossi
   Jory C. Ruggiero
   WESTERN JUSTICE ASSOCIATES, PLLC
   303 West Mendenhall, Suite 1
   Bozeman, MT 59715
   domenic@westernjusticelaw.com
   jory@westernjusticelaw.com

                                              MATOVICH, KELLER & HUSO, P.C.

                                              By: /s/ Katherine S. Huso
                                                      Katherine S. Huso
                                                      *Attorney for Plaintiff United Fire & Casualty Company*